EVANDER, J.
Florida Power and Light (FPL) appeals, and the City of South Daytona (City) cross-appeals, from an amended declaratory judgment. We affirm in part and reverse in part.
In 1978, FPL and the City entered into a franchise agreement, whereby the City granted FPL the right to place its electric facilities within the City for the purpose of supplying electricity within the City for a period of thirty (30) years. In return, FPL paid a monthly franchise fee to the City equal to six percent (6%) of FPL’s revenues from the sale of electric power to the City and its residents. The franchise agreement also granted the City, at the expiration of the thirty-year franchise term, the option to purchase FPL’s property utilized by FPL under the agreement for an amount equal to the existing cost of replacement of such property, less depreciation to date of sale.
The agreement expired on or about June 28, 2008. The parties were unable to agree on the term of the new franchise agreement and the City expressed its interest in acquiring FPL’s property.[1] The City subsequently brought a declaratory judgment action requesting a declaration on: (1) the inventory of FPL’s assets that were subject to the purchase option; (2) the amount of money the City would be required to pay FPL to acquire those assets, and (3) whether the City would be *1236 obligated to pay FPL’s “stranded costs.”[2] After a two-day non-jury trial, the trial court entered an amended declaratory judgment (1) setting forth the assets subject to the City’s option to purchase, (2) determining that the purchase option price would be $15,543,603.00, and (3) concluding that FPL would not be entitled to recover stranded costs from the City.
FPL appealed the trial court’s ruling on the stranded cost issue. At oral argument, the City properly conceded that it was error for the trial court to make a determination that FPL was precluded from seeking stranded costs should the City exercise its purchase option and subsequently purchase power from an entity other than FPL. Both parties now agree that such issue would have to be decided by the appropriate regulatory board. See Transmission Access Policy Study Grp. v. Fed. Energy Regulatory Comm’n, 225 F.3d 667 (D.C.Cir.2000).
In its cross-appeal, the City challenged the purchase option value found by the trial court. We conclude that the trial court’s determination of the purchase option price was supported by substantial, competent evidence and affirm as to that issue. We find no merit to the City’s argument that the evidence presented by FPL as to depreciation rates was contrary to the parties’ rather ambiguous pretrial stipulation.
AFFIRMED, in part; REVERSED, in part; REMANDED.
ORFINGER, C.J. and LAWSON, J., concur.

. Subsequent to the expiration of the thirty-year term, FPL has continued to provide electrical services to the City and to pay the franchise fee.

. The "stranded costs” that could potentially be sought by FPL are those costs that FPL incurred with regulatory approval and with the expectation that it would continue to serve the City beyond the expiration of the franchise agreement. Such costs would become "stranded” if the City exercised its purchase option, took advantage of the open transmission access rule adopted by the Federal Energy Regulatory Commission in 1996, and utilized FPL's transmission lines to acquire power from a supplier other than FPL. See 61 Fed.Reg. 21540-01 (May 10, 1996); Transmission Access Policy Study Grp. v. Fed. Energy Regulatory Comm’n, 225 F.3d 667, 683 (D.C.Cir.2000).